UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CHADLEN DeWAYNE SMITH,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>BLAINE COUSINS; DENISE<br>WOOLDRIDGE; B. HARRISON;<br>BRENDA KNIGHT; D. SANICOLA;<br>PAT KNIGHT; P. EISMANN; C.<br>MOROZUMI; W. GOODE; NEIL<br>UHRIG; REBECCA PEREZ; JOHN<br>DOES 1 through 10; and JANE DOES<br>1-10,<br><br>　　　　　　Defendants. | Case No. 1:22-cv-00527-DCN<br><br>**INITIAL REVIEW ORDER BY<br>SCREENING JUDGE** |

The Clerk of Court conditionally filed Plaintiff Chadlen DeWayne Smith's
Complaint as a result of Plaintiff's status as an inmate and in forma pauperis request. The
Court now reviews the Complaint to determine whether it or any of the claims contained
therein should be summarily dismissed under 28 U.S.C. §§ 1915 and 1915A. Having
reviewed the record, and otherwise being fully informed, the Court enters the following
Order.

**1.      Pleading Standards and Screening Requirement**

A complaint must contain "a short and plain statement of the claim showing that the
pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under modern pleading standards,
Rule 8 requires a complaint to "contain sufficient factual matter, accepted as true, to 'state

a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The *Iqbal/Twombly* "facial plausibility" standard is met when a complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "[D]etailed factual allegations" are not required, but a plaintiff must offer "more than ... unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Id.* (internal quotation marks omitted).

If the facts pleaded are "merely consistent with a defendant's liability," or if there is an "obvious alternative explanation" that would not result in liability, the complaint has not stated a claim for relief that is plausible on its face. *Id.* at 678, 682 (internal quotation marks omitted). Bare allegations that amount to a mere restatement of the elements of a cause of action, without adequate factual support, are not enough.

The Prison Litigation Reform Act ("PLRA")[1] requires that the Court review complaints filed by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity, as well as complaints filed in forma pauperis, to determine whether summary dismissal is appropriate. 28 U.S.C. §§ 1915 & 1915A. The Court must dismiss any claims that do not have adequate factual support or are frivolous or malicious. 28 U.S.C. §§ 1915(e)(2) & 1915A.

The Court also must dismiss claims that fail to state a claim upon which relief may be granted or that seek monetary relief from a defendant who is immune from such relief.

---

[1] Pub. L. No. 104-134, 110 Stat. 1321, *as amended*, 42 U.S.C. § 1997e, *et seq.*

INITIAL REVIEW ORDER BY SCREENING JUDGE - 2

*Id*. These last two categories—together with claims that fall outside a federal court's narrow grant of jurisdiction—encompass those claims that might, or might not, have factual support but nevertheless are barred by a well-established legal rule.

The Court liberally construes the pleadings to determine whether a case should be dismissed for a failure to plead sufficient facts to support a cognizable legal theory or for the absence of a cognizable legal theory. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable factual *and* legal basis. *See Jackson v. Arizona*, 885 F.2d 639, 640 (9th Cir. 1989) (discussing Federal Rule of Civil Procedure 12(b)(6)), *superseded by statute on other grounds as stated in Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (stating that Rule 12(b)(6) authority to dismiss claims was expanded by the PLRA, giving courts power to dismiss deficient claims, sua sponte, before or after opportunity to amend).

## 2.      Factual Allegations

Plaintiff is a prisoner in the custody of the Idaho Department of Correction. The claims asserted in the instant action arose before Plaintiff was incarcerated.

Plaintiff asserts civil rights claims under the First, Fourth, and Fourteenth Amendments, as well as various Idaho state law claims, arising from the actions of various police officers and other officials of the City of Post Falls, Idaho. *See Compl*., Dkt. 3, at 2, 10. Plaintiff alleges that these officials maliciously prosecuted Plaintiff and that they retaliated against him for his exercise of his First Amendment right to record video while on public property. *See generally id*.

3.      **Standards of Law**

Plaintiff brings claims under 42 U.S.C. § 1983, the civil rights statute. To state a plausible civil rights claim, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

Governmental officials generally are not liable for damages in their individual capacities under § 1983 unless they personally participated in the alleged constitutional violations. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Iqbal*, 556 U.S. at 677 ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). Section 1983 does not allow for recovery against an employer or principal simply because an employee or agent committed misconduct. *Taylor*, 880 F.2d at 1045.

However, "[a] defendant may be held liable as a supervisor under § 1983 'if there exists ... a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). A plaintiff can establish this causal connection by alleging that a defendant (1) set in motion a series of acts by others that violated the Constitution, or knowingly refused to terminate a series of such acts, which the supervisor "knew or reasonably should have known would cause others to inflict a constitutional injury"; (2) knowingly failed to act or acted improperly "in the training, supervision, or control of his subordinates"; (3) acquiesced in the constitutional deprivation; or (4) engaged in "conduct that showed a reckless or callous indifference to

the rights of others." *Id*. at 1205–09 (internal quotation marks omitted).

A plaintiff cannot simply restate these standards of law in a complaint. Instead, a plaintiff must provide specific facts supporting the elements of each claim and must allege facts showing a causal link between each defendant and Plaintiff's injury or damage. Alleging "the mere possibility of misconduct" is not enough. *Iqbal*, 556 U.S. at 679.

### A.    First Amendment Claims

The First Amendment "prohibits state and local governments from enacting laws 'abridging the freedom of speech.'" *Lone Star Sec. & Video, Inc. v. City of Los Angeles*, 827 F.3d 1192, 1197 (9th Cir. 2016). If a restriction on speech is content based, meaning that it "target[s] speech based on its topic, idea, or message," the restriction is presumptively invalid. *Boyer v. City of Simi Valley*, 978 F.3d 618, 621 (9th Cir. 2020). Even a facially-neutral regulation is deemed content based "if it was adopted by the government because of disagreement with the message the speech conveys." *Lone Star*, 827 F.3d at 1198 (9th Cir. 2016) (internal quotation marks omitted). A content-based restriction is valid only if the government proves that it is narrowly tailored and serves a compelling state interest. *Id*.

The legal standards for a free speech claim differ if the restriction on speech is content neutral. Content-neutral time, place, and manner restrictions on speech in public places are valid if they are "narrowly tailored to serve a significant governmental interest[] and leave open ample alternative channels for communication of the information." *Id*. at 1197 (internal quotation marks omitted).

The First Amendment includes the right to be free from retaliation for exercising

constitutional rights. A plaintiff asserting a retaliation claim must plausibly allege the following:

> (1) [the plaintiff] was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity[,] and (3) the protected activity was a substantial or motivating factor in the defendant's conduct.

*Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006) (internal quotation marks and citations omitted). If a plaintiff establishes these elements, "the government can escape liability by showing that it would have taken the same action even in the absence of the protected conduct." *Id*.

Video recording can be a form of constitutionally protected speech. *See Animal Legal Def. Fund v. Wasden*, 878 F.3d 1184, 1203 (9th Cir. 2018); *see also Shay v. City of Huntington Beach*, 816 F. App'x 47, 49 (9th Cir. 2020) (unpublished) (holding that plaintiff established the elements of a retaliation claim because plaintiff "was tackled to stop his telephone recording" of an arrest).

"[B]are allegations" of a retaliatory motive are insufficient to support a retaliation claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 n.4 (9th Cir. 1985); *see also Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014) ("We have repeatedly held that mere speculation that defendants acted out of retaliation is not sufficient."). Further, not every retaliatory act taken by an official can be considered an adverse action that chills the exercise of protected speech. The proper inquiry asks whether the official's action "would chill or silence a person of ordinary firmness from future First Amendment activities." *Mendocino Envt'l Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999) (internal quotation marks

omitted).

A plaintiff asserting a retaliatory arrest claim usually must "'plead and prove the absence of probable cause,' because the presence of probable cause generally 'speaks to the objective reasonableness of an arrest' and suggests that 'the officer's animus is not what caused the arrest.'" *Ballentine v. Tucker*, 28 F.4th 54, 62 (9th Cir. 2022) (quoting *Nieves v. Bartlett*, 139 S. Ct. 1715, 1723–24 (2019). A narrow exception applies in cases "where officers have probable cause to make arrests, but typically exercise their discretion not to do so." *Nieves*, 139 S. Ct. at 1727. In such cases, "an unyielding requirement to show the absence of probable cause could pose a risk that some police officers may exploit the arrest power as a means of suppressing speech." *Id.* (internal quotation marks omitted). Probable cause for an arrest exists where the "facts and circumstances [are] sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense." *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975).

### B. *Fourth Amendment Claims*

The Fourth Amendment protects against unreasonable searches and seizures. Generally speaking, "every arrest, and every seizure having the essential attributes of a formal arrest, is unreasonable unless it is supported by probable cause." *Michigan v. Summers*, 452 U.S. 692, 700 (1981). "[T]he application of the Fourth Amendment depends on whether the person invoking its protection can claim a 'justifiable,' a 'reasonable,' or a 'legitimate expectation of privacy' that has been invaded by government action." *Smith v. Maryland*, 442 U.S. 735, 740 (1979).

This inquiry "normally embraces two discrete questions. The first is whether the

individual, by his conduct, has exhibited an actual (subjective) expectation of privacy—whether ... the individual has shown that he seeks to preserve something as private. The second question is whether the individual's subjective expectation of privacy is one that society is prepared to recognize as reasonable." *Id.* (internal quotation marks, citations, and alterations omitted).

An arrest without probable cause gives rise to a false arrest claim. When a detention occurs as the result of a false arrest, a false imprisonment claim—based on a deprivation of liberty—arises under the Due Process Clause. *See Baker v. McCollan*, 443 U.S. 137, 142 (1979). Under § 1983, a plaintiff must meet the elements of common law false imprisonment[2] and establish that the imprisonment resulted in a violation of due process rights under the Fourteenth Amendment. *Ortega v. Christian*, 85 F.3d 1521, 1526 (11th Cir. 1996). The plaintiff also needs to show that the persons detaining him were involved in or aware of the wrongful nature of the arrest. *Id.* at 1526–27.

### C.   *Malicious Prosecution Claims*

The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives a person of life, liberty, or property without due process of law. A person cannot obtain relief on a due process claim unless he demonstrates that he was deprived of one of these protected interests. *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 459–60 (1989). Liberty interests can arise from the Constitution itself, or they can be created by

---

[2] The elements of common law false imprisonment in Idaho are (1) restraint of the physical liberty of another (2) without legal justification. *Clark v. Alloway*, 170 P.2d 425, 428 (Idaho 1946).

state law. *See Moor v. Palmer*, 603 F.3d 658, 661 (9th Cir. 2010).

If a plaintiff shows that he had a liberty interest protected by the Due Process Clause, the factfinder must then determine what process was due. This determination must be made on a case-by-case basis. *Wolff v. McDonnell*, 418 U.S. 539, 560 (1974) ("Consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action.") (internal quotation marks and alteration omitted). The "essence of due process" is notice and an opportunity to be heard. *Mathews v. Eldridge*, 424 U.S. 319, 348 (1976).

Due process is a flexible concept and calls for such procedural protections as the particular situation demands. *Id*. Three factors inform whether a plaintiff has received the process to which he was due: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Malicious prosecution generally "does not constitute a deprivation of life, liberty or property without due process of law and, therefore, is not cognizable" under § 1983. *Cline v. Brusett*, 661 F.2d 108, 112 (9th Cir. 1981). However, there is an exception to this general rule for prosecutions pursued "with malice and without probable cause" and undertaken "for the purpose of denying [the plaintiff] equal protection or another specific

constitutional right." *Lassiter v. City of Bremerton*, 556 F.3d 1049, 1054 (9th Cir. 2009) (alterations omitted). The plaintiff asserting a malicious prosecution claim must also show that the proceedings were terminated in the plaintiff's favor, for example, that the charges against him were dismissed. *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 921 (2017).

### D.    *Idaho State Law Claims*

In addition to § 1983 claims, Plaintiff also asserts state law claims of libel, slander, and unreasonable search and seizure under Article 1, § 17 of the Idaho Constitution.

Libel and slander are sub-categories of the tort of defamation. Under Idaho law, a defamation claim against a non-public figure requires that the plaintiff show (1) that the defendant "communicated information concerning the plaintiff to others," (2) "that the information was defamatory," and (3) "that the plaintiff was damaged because of the communication." *Clark v. The Spokesman-Review*, 163 P.3d 216, 219 (Idaho 2007). A defamatory statement is one that "tends to harm a person's reputation, usually by subjecting the person to public contempt, disgrace, or ridicule, or by adversely affecting the person's business." *Elliott v. Murdock*, 385 P.3d 459, 465 (Idaho 2016) (internal quotation marks and alterations omitted). Not all damaging communications constitute defamation. For example, "[s]tatements of opinion," as well as statements of fact "that cannot be proved false," are not defamatory. *Irish v. Hall*, 416 P.3d 975, 980 (Idaho 2018) (internal quotation marks omitted).

Article I, § 17 of the Idaho Constitution is the state law equivalent of the Fourth Amendment and protects against unreasonable searches and seizures.

4.    **Discussion**

Plaintiff's Complaint, liberally construed, appears to state colorable First, Fourth, and Fourteenth Amendment claims, as well as state law claims of libel, slander, and unreasonable search and seizure. Accordingly, Plaintiff will be allowed to proceed on his § 1983 claims and, assuming Plaintiff has complied with the Idaho Tort Claims Act,[3] on his claims under Idaho law.[4]

5.    **Request for Appointment of Counsel**

Plaintiff also seeks appointment of counsel. Unlike criminal defendants, prisoners and indigents in civil actions have no constitutional right to counsel unless their physical liberty is at stake. *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 25 (1981). Whether a court appoints counsel for indigent litigants is within the court's discretion. *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986).

In civil cases, counsel should be appointed only in "exceptional circumstances." *Id*. To determine whether exceptional circumstances exist, the court should evaluate two factors: (1) the likelihood of success on the merits of the case, and (2) the ability of the plaintiff to articulate the claims pro se considering the complexity of legal issues involved. *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991). Neither factor is dispositive, and both must be evaluated together. *Id*.

---

[3] The Idaho Tort Claims Act provides that any claim against a governmental employee "for any act or omission of the employee within the course or scope of his employment shall be presented to and filed with the clerk or secretary" of the governmental entity no later than 180 days "from the date the claim arose or reasonably should have been discovered, whichever is later." Idaho Code § 6-906.

[4] The Court will exercise supplemental jurisdiction over Plaintiff's state law claims. *See* 28 U.S.C. § 1367.

Plaintiff's Complaint, liberally construed, appears to state a claim upon which relief could be granted if the allegations are proven at trial. However, without more than the bare allegations of the Complaint, the Court does not have a sufficient basis upon which to assess the merits at this point in the proceeding. The Court also finds that Plaintiff has articulated the claims sufficiently, and that the legal issues in this matter are not complex. Based on the foregoing, the Court will deny Plaintiff's request for appointment of counsel. If it seems appropriate later in this litigation, the Court will reconsider appointing counsel.

A federal court has no authority to require attorneys to represent indigent litigants in civil cases under 28 U.S.C. § 1915(e)(1) or under the Court's inherent authority. *Mallard v. U.S. Dist. Court for S. Dist. of Iowa*, 490 U.S. 296, 298 (1989) (holding that the appointment of counsel provision in § 1915, formerly found in subsection (d), does not "authorize[] a federal court to require an unwilling attorney to represent an indigent litigant in a civil case"); *Veenstra v. Idaho State Bd. of Corr.*, Case No. 1:15-cv-00270-EJL (D. Idaho May 4, 2017) ("[The Court] does not have inherent authority to compel an attorney to represent Plaintiffs pro bono."). Rather, when a Court "appoints" an attorney, it can do so only if the attorney voluntarily accepts the assignment. *Id.* The Court has no funds to pay for attorneys' fees in civil matters such as this one, and it is often difficult to find attorneys willing to work on a case without payment—especially in prisoner cases, where contact with the client is particularly difficult. For these reasons, Plaintiff should attempt to procure counsel on a contingency or other basis, if possible.

## 6.    Conclusion

Plaintiff may proceed as outlined above. This Order does not guarantee that

INITIAL REVIEW ORDER BY SCREENING JUDGE - 12

Plaintiff's claims will be successful. Rather, it merely finds that they are plausible—meaning that they will not be summarily dismissed at this time but will proceed to the next stage of litigation. This Order is not intended to be a final or a comprehensive analysis of Plaintiff's claims.

Defendants may still file a motion for dismissal or motion for summary judgment if the facts and law support such a motion.[5] Because (1) prisoner filings must be afforded a liberal construction, (2) governmental officials often possess the evidence prisoners need to support their claims, and (3) many defenses are supported by governmental records, an early motion for summary judgment—rather than a motion to dismiss—is often a more appropriate vehicle for asserting procedural defenses such as immunity from suit.

## ORDER

**IT IS ORDERED:**

1.      Plaintiff's request for appointment of counsel (contained in the Complaint) is DENIED.[6]

2.      Defendants will be allowed to waive service of summons by executing, or having their counsel execute, the Waiver of Service of Summons as provided

---

[5] The standards for a motion to dismiss for failure to state a claim under Rule 12(b)(6) are the same standards that the Court has used to screen the Complaint under §§ 1915 and 1915A. Therefore, motions to dismiss for failure to state a claim are disfavored in cases subject to §§ 1915 and 1915A and may be filed only in extraordinary circumstances.

[6] The Court notes that, in another of his cases, Plaintiff's request for appointment of counsel was granted in part and that the Court is currently attempting to find pro bono counsel for Plaintiff. *See Smith v. Bangs*, No. 2:22-cv-00426-BLW (Dkt. 9) (D. Idaho Feb. 27, 2023). If counsel is appointed in that case, Plaintiff may discuss with that counsel whether counsel wishes to represent Plaintiff in this case.

by Fed. R. Civ. P. 4(d) and returning it to the Court within 30 days. If Defendants choose to return the Waiver of Service of Summons, the answer or pre-answer motion will be due in accordance with Rule 12(a)(1)(A)(ii). Accordingly, the Clerk of Court will forward a copy of the Complaint (Dkt. 3), a copy of this Order, and a Waiver of Service of Summons to **Eileen J. McGovern, City of Post Falls Legal Department, 408 N. Spokane Street, Post Falls, Idaho, 83854.**

3.   Should any entity determine that the individuals for whom counsel for the entity was served with a waiver are not, in fact, its employees or former employees, or that its attorney will not be appearing for the entity or for particular former employees, it should file a notice within the CM/ECF system, with a copy mailed to Plaintiff, identifying the individuals for whom service will not be waived.

4.   If Plaintiff receives a notice indicating that service will not be waived, Plaintiff will have an additional 90 days from the date of such notice to file a notice of physical service addresses of the non-waiving Defendants, or claims against them may be dismissed without prejudice without further notice.

5.   The Court cannot effect service on John or Jane Doe Defendants. If the true identity of any of the Doe Defendants comes to light during discovery, Plaintiff may move to amend his Complaint to assert claims against those

INITIAL REVIEW ORDER BY SCREENING JUDGE - 14

defendants.[7]

6.     Unless otherwise ordered, the parties must follow the deadlines and guidelines in the Standard Disclosure and Discovery Order for Pro Se Prisoner Civil Rights Cases, issued with this Order.

7.     Any amended pleadings must be submitted, along with a motion to amend, within 150 days after entry of this Order.

8.     Dispositive motions must be filed by the later of (a) 300 days after entry of this Order or (b) 300 days after entry of an order denying all or part of a preliminary Rule 12(b) or Rule 56 motion.

9.     Each party must ensure that all documents filed with the Court are simultaneously served upon the opposing party (through counsel if the party has counsel) by first-class mail or via the CM/ECF system, pursuant to Federal Rule of Civil Procedure 5. Each party must sign and attach a proper mailing certificate to each document filed with the court, showing the manner of service, date of service, address of service, and name of person upon whom service was made.

---

[7] Any amended complaint must contain all of Plaintiff's allegations in a single pleading and cannot rely upon or incorporate by reference prior pleadings. Dist. Idaho Loc. Civ. R. 15.1 ("Any amendment to a pleading, whether filed as a matter of course or upon a motion to amend, must reproduce the entire pleading as amended. The proposed amended pleading must be submitted at the time of filing a motion to amend."); *see also Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997) ("[An] amended complaint supersedes the original, the latter being treated thereafter as non-existent."), *overruled in part on other grounds by Lacey v. Maricopa County*, 693 F.3d 896, (9th Cir. 2012) (en banc); *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc*., 896 F.2d 1542, 1546 (9th Cir. 1990) (holding that the district court erred by entering judgment against a party named in the initial complaint, but not in the amended complaint).

10.    The Court will not consider ex parte requests unless a motion may be heard ex parte according to the rules and the motion is clearly identified as requesting an ex parte order, pursuant to Local Rule of Civil Practice before the United States District Court for the District of Idaho 7.2. ("Ex parte" means that a party has provided a document to the court, but that the party did not provide a copy of the document to the other party to the litigation.)

11.    All Court filings requesting relief or requesting that the Court make a ruling or take an action of any kind must be in the form of a pleading or motion, with an appropriate caption designating the name of the pleading or motion, served on all parties to the litigation, pursuant to Federal Rule of Civil Procedure 7, 10 and 11, and Local Rules of Civil Practice before the United States District Court for the District of Idaho 5.1 and 7.1. The Court will not consider requests made in the form of letters.

12.    No party may have more than three pending motions before the Court at one time, and no party may file a motion on a particular subject matter if that party has another motion on the same subject matter currently pending before the Court. Motions submitted in violation of this Order may be stricken, summarily denied, or returned to the moving party unfiled.

13.    Plaintiff must notify the Court immediately if Plaintiff's address changes. Failure to do so may be cause for dismissal of this case without further notice.

14.    Pursuant to General Order 324, this action is hereby RETURNED to the Clerk of Court for random civil case assignment to a presiding judge, on the

proportionate basis previously determined by the District Judges, having given due consideration to the existing caseload.

DATED: June 14, 2023

David C. Nye
Chief U.S. District Court Judge