PETER C. ERBLAND – ISBA #2456
perbland@lclattorneys.com
KATHARINE B. BRERETON – ISBA #9583
kbrereton@lclattorneys.com
LAKE CITY LAW GROUP PLLC
435 W. Hanley Ave., Suite 101
Coeur d'Alene, ID  83815
Telephone: (208) 664-8115
Facsimile: (208) 664-6338

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CHADLEN DEWAYNE SMITH,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>BLAINE COUSINS; C. MOROZUMI; W. GOODE; NEIL UHRIG; P. BOWMAN; JOHN DOES I-X; and JANE DOES I-X,<br><br>　　　　　Defendants. | Case No. 1:22-cv-00527-BLW<br><br>**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 1**

Defendants Cousins, Morozumi, Goode, Uhrig, and Bowman, by and through their attorneys of record Peter C. Erbland and Katharine B. Brereton of Lake City Law Group PLLC, hereby submit this Memorandum in Support of Motion for Summary Judgment, pursuant to Federal Rule of Civil Procedure 56.

## I.    STANDARD OF REVIEW

### A.    Rule 56 – Summary Judgment.

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  It is well established that the purpose of summary judgment "is to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986).  The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material fact.  *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).

In considering a motion for summary judgment, the Court must consider the facts in the light most favorable to the non-moving party, unless the non-moving party's version of those facts is "blatantly contradicted by the record." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Once the moving party has met its burden, the burden shifts to the non-moving party who must then present evidence showing there is a genuine issue for trial.  *Celotex*, 477 U.S. at 323.  Although all reasonable inferences which can be drawn from the evidence must be drawn in a light most favorable to the non-movant, *T.W. Electrical Services, Inc., v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987), the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

### B.    Rule 201 – Judicial Notice.

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 2**

Rule 201 governs the judicial notice of adjudicative facts. Fed. R. Evid. R. 201(a). It provides that "the court may judicially notice a fact that is not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. R. 201(b)(1), (2). Further, it provides that "the court . . . must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. R. 201(c)(2). Under Rule 201, a court may take judicial notice of court filings and other matters of public record. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006). Defendant moves this Court to take judicial notice of the court filings contained within the appellate record in the underlying criminal case *State of Idaho v. Chadlen DeWayne Smith*, Supreme Court Case No. 49909-2022, parts of which are attached to the declaration of counsel.

## II.    ARGUMENT

To state a valid claim under 42 U.S.C. § 1983, a plaintiff must show "(i) that a person acting under color of state law committed the conduct at issue, and (ii) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States." *Leer v. Murphy*, 844 F.2d 628, 632-33 (9th Cir. 1988). "A person deprives another 'of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains].'" *Id*. at 633.

### A.    Defendants Did Not Violate Any Clearly Established Constitutional Right And Are Entitled To Qualified Immunity.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 3**

(2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (citing *Malley v. Briggs*, 475 U.S. 335, 343, 341 (1986)). The purpose of qualified immunity is to protect officials from undue influence with their duties and from potentially disabling threats of liability. *Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 70 F.3d 1095, 1098 (9th Cir. 1995). Qualified immunity shields law enforcement officers from civil liability under § 1983 "unless the officers violated a clearly established constitutional right." *Monzon v. City of Murrieta*, 978 F.3d 1150, 1156 (9th Cir. 2020).

Government officials sued in their individual capacity are entitled to qualified immunity if either (1) "the facts '[t]aken in the light most favorable to the party asserting the injury' demonstrates the officials' conduct did not violate a constitutional right," or (2) the right allegedly violated was not "clearly established at the time of the alleged violation." *Sandoval v. Las Vegas Metro. Police Dep't*, 756 F.3d 1154, 1160 (9th Cir. 2014) (quoting *Saucier v. Katz,* 533 U.S. 194, 201 (2001), overruled on other grounds by *Pearson*, 555 U.S. at 236). The qualified immunity test is an objective one based on the specific facts of the case. *Anderson v. Creighton*, 483 U.S. 635, 638-42 (1997). The court may address the two prongs of the qualified immunity inquiry in either order. *Sandoval*, 756 F.3d at 1160.

If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. *Saucier*, 533 U.S. at 201.  On the other hand, if a violation could be established based on a favorable view of the party's submissions, the next consequential step is to ask whether the right was clearly established. *Id.* "A clearly established right is one that is 'sufficiently clear that every reasonable official would have

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 4**

understood that what he is doing violates that right.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). "The question is what the officer reasonably understood his powers and responsibilities to be when he acted under clearly established standards." *Saucier*, 533 U.S. at 208.

"An officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *City of Escondido v. Emmons*, 586 U.S. 38, 43 (2019) (per curiam) (quoting *Kisela v. Hughes*, 584 U.S. 100, 105 (2018) (per curiam)). To overcome the hurdle of qualified immunity, Plaintiff must do more than show that general constitutional principles are clearly established. He must "identify a case where an officer acting under similar circumstances as defendants was held to have violated" the Constitution. *Sharp v. County of Orange,* 871 F.3d 901, 911 (2017) (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017)).

Even more stringent, Plaintiff must "point to prior case law that articulates a constitutional rule specific enough to alert these [officers] in this case that their particular conduct was unlawful." *Id* (emphasis in original). And that case law must be "controlling" or settled by "a robust consensus of cases of persuasive authority that clearly prohibits the officer's conduct in the particular circumstances, with a high degree of specificity." *Hopson v. Alexander*, 71 F.4th 692, 697 (9th Cir. 2023). Plaintiff bears the burden to establish that the rights violated were "clearly established". *Houghton v. South*, 965 F.2d 1532, 1534 (9th Cir. 1992).

### 1.    Plaintiff Cannot Succeed on the Claim for the Violation of His First Amendment Rights.

According to the allegations in Plaintiff's Complaint, the claim for the violation of his First Amendment rights is based on an encounter he alleges occurred on December 28, 2020, at the Post Falls Police Department. Dkt. 3 at 3-4. Plaintiff claims he entered the Post Falls Police Department

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 5**

to pick up records responsive to a public records request he had previously submitted, and was recording this encounter. *Id*. Plaintiff received a CD with the requested information from Officer Bowman, and claims that Officer Bowman and another officer immediately served him with what they said was an "Official Trespass Warning Notice" and a criminal trespass warning for the Post Falls Police Department. *Id*. at 4. Plaintiff claims he was informed that he could be arrested if he did not leave the premises immediately or if he returned to the Post Falls Police Department, no reason for the trespass was provided to him, and so he left the police department under threat of arrest. *Id*. Plaintiff's theory is that the trespass notice was served on him in retaliation for recording public officials and public space.

"The First Amendment prohibits government officials from subjecting individuals to retaliatory actions after the fact for having engaged in protected speech." *Adams v. Cty. of Sacramento*, 116 F.4th 1004, 1010 (9th Cir. 2024) (cleaned up). To establish a First Amendment retaliation claim, Plaintiff must show that he was engaged in a constitutionally protected activity, the actions of Officer Bowman would chill a person of ordinary firmness from continuing to engage in the protected activity, and the protected activity was a substantial or motivating factor in Officer Bowman's conduct. *Index Newspapers LLC v. United States Marshals Serv*., 977 F.3d 817, 827 (9th Cir. 2020).

A "substantial or motivating factor" must be established by first proving that the official who engaged in the alleged retaliatory acts knew of the plaintiff's protected conduct, and second, the plaintiff must "(i) establish proximity in time between [the plaintiff's] expressive conduct and the allegedly retaliatory actions; (ii) produce evidence that the defendant expressed opposition to [the plaintiff's] speech, either to [the plaintiff] or to others; or (iii) demonstrate that the

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 6**

[defendant's] proffered explanations for their adverse actions were false and pretextual." *Alpha Energy Savers, Inc. v. Hansen,* 381 F.3d 917, 929 (9th Cir. 2004).

Even if Plaintiff establishes the requisite elements of a retaliation claim, "the government can escape liability by showing that it would have taken the same action even in the absence of the protected conduct." *Pinard v. Clatskanie Sch. Dist.* 6J, 467 F.3d 755, 770 (9th Cir. 2006). "If there is a finding that retaliation was not the but-for cause of the [alleged adverse action], the claim fails for lack of causal connection between unconstitutional motive and resulting harm, despite proof of some retaliatory animus in the official's mind." *Hartman v. Moore*, 547 U.S. 250, 260 (2006).

### a.    Plaintiff Was Not Engaged in a Constitutionally Protected Activity.

The First Amendment protects the right to photograph and record matters of public interest. *Bernal v. Sacramento Cty. Sheriff's Dep't*, 73 F.4th 678, 699 (9th Cir. 2023); *Animal Legal Def. Fund v. Wasden*, 878 F.3d 1184, 1203-04 (9th Cir. 2018). Whether speech addresses a matter of public concern or interest is an issue of law. *Hernandez v. City of Phoenix*, 43 F.4th 966, 977 (9th Cir. 2022). The burden to establish that speech substantially addresses a matter of public interest or concern falls to the plaintiff. *Demers v. Austin*, 746 F.3d 402, 415 (9th Cir. 2014); *see Adams*, 116 F.4th at 1010.

In *Connick v. Meyers*, the Supreme Court said a matter of public concern was "any matter of political, social, or other concern to the community." 461 U.S. 138, 146 (1983). The speech must involve a "subject of general interest and of value and concern to the public at the time of publication." *City of San Diego v. Roe*, 543 U.S. 77, 84 (2004). "The focus must be upon whether the public or community is likely to be truly interested in the particular expression". *Roe v. City & Cty. of S.F.*, 109 F.3d 578, 585 (9th Cir. 1997).

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 7**

By contrast, speech on "matters only of personal interest" are not protected by the First Amendment. 43 F.4th at 977. When a plaintiff's speech concerns a personal dispute or grievance which is of "no relevance to the public's evaluation of the performance of governmental agencies", such speech is generally not of public interest or concern. *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003). In such a situation, "a federal court is not the appropriate forum in which to review" an alleged retaliatory action. *Adams*, 116 F.4th at 1011 (internal quotations and citations omitted). When determining whether speech addresses a matter of public concern or interest, the court will consider the content of the statements, the time, place, and manner of the statements, and the context in which the statements were made, as revealed by the whole record. 461 U.S. at 147-48. The content of the statement is the most important factor. *Desrochers v. City of San Bernardino*, 572 F.3d 703, 710 (9th Cir. 2009).

The Ninth Circuit has "never held that a simple reference to government functioning automatically qualifies as speech on a matter of public concern," nor does a passing reference to public safety which is only incidental to the message conveyed amount to protected speech. *Desrochers*, 572 F.3d at 711; *see Roth v. Veteran's Admin. of United States*, 856 F.2d 1401, 1405 (9th Cir. 1988) (merely because speech concerns public monies or government inefficiency does not automatically entitle it to protection), *overruled on other grounds by Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006).

Plaintiff cannot meet his burden to prove that his video recording was on a matter of public interest. What Plaintiff describes in his verified complaint is that he filmed his encounter of obtaining a CD with records responsive to a public records request at the Post Falls Police Department. Dkt. 3 at 3-4. Plaintiff seemingly believes that the mere act of recording public

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 8**

employees or public property is sufficient to bring his expressive activity under the protection of the First Amendment. Existing precedent requires more.

Filming an unremarkable activity of going to public property to retrieve a CD containing public records does not involve a "subject of general interest and of value and concern to the public". *City of Sand Diego*, 543 U.S. at 84. Plaintiff's video recording, based on his own account, is uninteresting and banal. There is nothing to indicate that "the public or community is likely to be truly interested in the particular expression." *Roe*, 109 F.3d at 585. Likewise, the recording is bereft of any content which would be relevant "to the public's evaluation of the performance of governmental agencies". *Coszalter*, 320 F.3d at 973. Accordingly, Plaintiff's video recording is not of public interest or concern. *Id.*

That Plaintiff's video recording is not the type of speech entitled to protection is well-established by controlling precedent. If a plaintiff cannot rely upon a simple or passing reference to government functioning, public safety, public monies, or government efficiency to succeed on a First Amendment claim, then a recording like Plaintiff's, which has no indication that it references in any manner the performance or functioning of the government, also cannot amount to protected speech to sustain his claim. *Desrochers*, 572 F.3d at 711; *Roth*, 856 F.2d at 1405.

   **b.**  **Even if Plaintiff Could Establish He Was Engaged in Protected Activity, Plaintiff Cannot Prove With Admissible Evidence the Remaining Elements of His Retaliation Claim.**

The retaliatory conduct complained of by Plaintiff is a threat of arrest if he remained on or returned to the premises of the Post Falls Police Department. Dkt. 3 at 4. Nowhere in Plaintiff's complaint is it alleged that Officer Bowman or anyone else actually arrested Plaintiff. Indeed, Plaintiff's account of what occurred after he departed from the premises only serves to dispel any notion that the actions of Officer Bowman would chill a person of ordinary firmness from

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 9**

continuing to engage in the protected activity. Dkt. 3 at 4. Plaintiff claims he contacted the City

Administrator, Shelly Enderud, regarding the "Official Trespass Warning Notice" by email, and

Ms. Enderud informed him that he was not actually served with an "Official Trespass Warning

Notice" which trespassed him from any City property and Plaintiff would need to address the

matter with the Chief of Police. *Id*. According to Plaintiff, he tried multiple times to contact Chief

Pat Knight, and his calls were only returned by Officer Eismann who left voicemails on December

31, 2020, and January 1, 2021. *Id*.

It is well-settled that verbal threats cannot reasonably be expected to deter protected speech

and thus do not violate a plaintiff's First Amendment Rights. *See Nunez v. City of Los Angeles*,

147 F.3d 867, 875 (9th Cir. 1998); *see also Corales v. Bennett*, 567 F.3d 554, 565 (9th Cir. 2009)

(threat of discipline for First Amendment activity when such threat is based upon lawful

consequences and is not actually administered does not give rise to a retaliation claim); *Gaut v.*

*Sunn*, 810 F.2d 923, 925 (9th Cir. 1987) (mere threat to do an act prohibited by the Constitution is

not the equivalent of doing the act itself).

Although Plaintiff claims he left the premises under threat of arrest if he had remained at

the police department and continued recording, a closer reading of Plaintiff's account demonstrates

that the conduct of Officer Bowman could not reasonably be expected to deter a person of ordinary

firmness from continuing to engage in expressive activity. *Index Newspapers LLC*, 977 F.3d at

827. It is evident that Plaintiff made the assumption that the "Official Trespass Warning Notice"

and threat to arrest had anything to do with him recording public employees or public property.

Dkt. 3 at 4. Plaintiff does not provide any facts from which it could reasonably be inferred that

his recording activities were a basis for the trespass. Plaintiff does not claim that Officer Bowman

or the other officer said anything to him about recording, or that the trespass notice contained any

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 10**

language regarding his recording activities, or that Officer Eismann confirmed in the voicemails left for Plaintiff that he was trespassed from the property because he had recorded public employees or public property.

The final element for Plaintiff to establish is that the protected activity was a substantial or motivating factor in Officer Bowman's conduct. *Index Newspapers LLC*, 977 F.3d at 827. Plaintiff has no evidence that Officer Bowman knew of Plaintiff's protected conduct. Dkt. 3 at 2-4. According to Plaintiff's Complaint, he had not had any interactions with Officer Bowman prior to December 28, 2020. Dkt. 3 at 2-4. Plaintiff does not indicate whatsoever that Officer Bowman had any knowledge of any actual protected activity. *Alpha Energy Savers*, 381 F.3d at 929. Because Plaintiff will not be able to produce admissible evidence to establish that Officer Bowman knew of any protected activity, Plaintiff cannot prove that Officer Bowman retaliated against him because of his protected activity. *Keyser v. Sacramento City Unified Sch. Dist.*, 265 F.3d 741, 751 (9th Cir. 2001); *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 797 (9th Cir. 1982).

### 2.    Plaintiff Cannot Succeed on Any of his Claims for the Violation of His Fourth Amendment Rights.

Plaintiff's claims for the violation of his Fourth Amendment rights are premised upon the following events: on January 3, 2021, Officer Cousins detained Plaintiff when he ran his drivers license, performed a pat down search of Plaintiff and searched Plaintiff's pockets, seized a Moto cell phone, a Fuji digital camera, a Samsung smart phone, and a ZTE flip phone from Plaintiff's person and his car, and arrested Plaintiff for second-degree stalking; Officer Morozumi searched Plaintiff's phone during an inventory search of Plaintiff's car; Detective Uhrig exceeded the scope of the search permitted by the search warrant issued on January 5, 2021; Detective Uhrig obtained a search warrant on January 8, 2021, based on false testimony, and then exceeded the scope of the search permitted by the search warrant; Detective Uhrig arrested Plaintiff on January 11, 2021, for

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 11**

possession of child pornography, seized a UXM smart phone, impounded Plaintiff's car, performed an inventory search of Plaintiff's car for the sole purpose of criminal investigation, and seized a laptop from the car; and Detective Uhrig procured a search warrant on January 12, 2021, based on false testimony. Dkt. 3 at 5-9.

### a.    Issue Preclusion Bars Nearly All of Plaintiff's Fourth Amendment Claims.

As set forth in Plaintiff's Complaint, he was arrested by Officer Cousins on January 3, 2021, for second-degree stalking, and by Detective Uhrig on January 11, 2021, for possession of child pornography. Dkt. 3 at 6, 8. In the underlying criminal proceedings, Plaintiff filed a motion to suppress, arguing that Officer Cousins did not have probable cause for the arrest on January 3, 2021; the search of Plaintiff's phone exceeded the permissible scope of the search warrant issued by the magistrate on January 5, 2021; the search of Plaintiff's phone exceeded the permissible scope of the search warrant issued by the magistrate on January 8, 2021; Detective Uhrig did not have probable cause for the arrest on January 11, 2021; and Detective Uhrig procured a search warrant on January 12, 2021, based on falsely claiming that he had located child pornography on Plaintiff's phone on January 5, 2021. Brereton Decl., Ex. A at City-094-108. The district court denied Plaintiff's motion to suppress, and Plaintiff challenged the district court's determination that his arrest for stalking was supported by probable cause before the Idaho Supreme Court. Brereton Decl., Ex. B at 11-18; *State v. Smith*, 569 P.3d 137, 143 (Idaho 2025).

The district court found that there was probable cause for Officer Cousins to arrest Plaintiff for second-degree stalking on January 3, 2021. Brereton Decl., Ex A at City-115-118. The district court found that the search warrant issued by the magistrate on January 5, 2021, to search the items seized when Plaintiff was arrested on January 3, 2021, was supported by ample probable cause and the search of the evidence seized did not exceed the scope of the warrant. Brereton Decl., Ex

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 12**

A at City-116-118. The district court likewise affirmed that "it [was] clear that there was sufficient probable cause" for the search warrant issued by the magistrate on January 8, 2021, and the search of the evidence seized did not exceed the scope of the warrant. *Id.* The district court determined there was probable cause for the arrest of Plaintiff on January 11, 2021, for possession of child pornography, and the impoundment and inventory search of Plaintiff's car was lawful. *Id.* The district court also found that there was no evidence that Detective Uhrig made any false statements in the affidavit filed in support of the search warrant issued on January 12, 2021, noting the affidavit did not omit any facts, it described the steps which led up to the search warrant, and it tied in the potential evidence sought by the search warrant with what Detective Uhrig had searched in the days prior. *Id.*

On appeal, Plaintiff challenged the district court's determinations that his arrest for stalking was supported by probable cause and the impoundment and inventory search of Plaintiff's car was lawful. Brereton Decl., Ex. B at 11-18; *Smith*, 569 P.3d at 143. Plaintiff did not challenge any of the other determinations of the district court when it denied the motion to suppress. Brereton Decl., Ex. B at 11-18.

The Idaho Supreme Court concluded that "a reasonable, prudent person would believe that Smith knowingly and maliciously engaged in a course of conduct by following the dispatcher and appearing near her residence, which seriously alarmed, annoyed, or harassed her and would cause a reasonable person substantial emotional distress." *Smith*, 569 P.3d at 146. The Court went on to affirm that Officer Cousins had probable cause to arrest Plaintiff for second-degree stalking, observing that, "the entirety of information known to the officer established probable cause to believe that Smith engaged in a course of conduct that, based on the totality of the circumstances, could have led a person of ordinary prudence to believe that Smith was stalking the dispatcher."

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 13**

*Id*. at 147. The Court upheld the district court's determination that there was probable cause for Plaintiff's arrest, and the seizure of Plaintiff's phone was lawful. *Id*.

The doctrine of res judicata bars a party from "relitigating issues that were or could have been raised" in an action if there has already been a final judgment on the merits. *Allen v. McCurry*, 449 U.S. 90, 94 (1980). Federal courts adhere to this doctrine, even if the underlying final judgment is a state court judgment, in order to "reduce unnecessary litigation," allow for reliance on adjudication, and also "promote the comity between state and federal courts that has been recognized as a bulwark of the federal system." *See id*. at 95-96. Further, the Ninth Circuit Court of Appeals has held the Full Faith and Credit Act requires that federal courts "give the same preclusive effect to a state-court judgment as another court of that State would give." *Palomar Mobilehome Park Ass'n v. San Marcos*, 989 F.2d 362, 364 (9th Cir. 1993). Therefore, a court should apply the state's res judicata law, of the state where the district court is located to determine if an action should be dismissed on preclusion grounds. *See id*.

The relevant res judicata state law in Idaho controls both claim preclusion and issue preclusion. *Ticor Title Co. v. Stanion*, 144 Idaho 119, 123, 157 P.3d 613, 617 (2007). Issue preclusion protects litigants from having to relitigate an identical issue in a subsequent action. *Rodriguez v. Dep't of Corr.*, 136 Idaho 90, 92, 29 P.3d 401, 403 (2001). "Five factors are required in order for issue preclusion to bar the relitigation of an issue determined in a prior proceeding: (1) the party against whom the earlier decision was asserted had a full and fair opportunity to litigate the issue decided in the earlier case; (2) the issue decided in the prior litigation was identical to the issue presented in the present action; (3) the issue sought to be precluded was actually decided in the prior litigation; (4) there was a final judgment on the merits

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 14**

in the prior litigation; and (5) the party against whom the issue is asserted was a party or in privity

with a party to the litigation." *Ticor Title*, 144 Idaho at 124, 157 P.3d at 618.

Here, Plaintiff claims that on January 3, 2021, Officer Cousins unlawfully arrested Plaintiff

for second-degree stalking; Officer Morozumi unlawfully searched Plaintiff's phone during an

inventory search; Detective Uhrig unlawfully searched the devices seized on January 3, 2021, by

exceeding the scope of the January 5, 2021, search warrant; Detective Uhrig unlawfully exceeded

the scope of the search permitted by the search warrant issued on January 8, 2021; Detective Uhrig

unlawfully arrested Plaintiff on January 11, 2021, for possession of child pornography; and

Detective Uhrig unlawfully procured a search warrant on January 12, 2021, based on false

testimony.  Dkt. 3 at 5-9. These issues are identical to the issues Plaintiff has already litigated in

the underlying criminal proceedings. Plaintiff was represented by counsel in the criminal

proceedings, went to trial, and then appealed his conviction to the Idaho Supreme Court.  For each

of these issues, another court has already reached a decision on the merits, demonstrating that

Plaintiff has already had a full and fair opportunity to litigate these issues. Because Plaintiff has

already litigated these issues, issue preclusion bars him from relitigating the same issues in this

Court.

      **b.**     **The Searches and Seizures Occurring on January 3, 8, and 11, 2021, Were Reasonable and Do Not Offend the Fourth Amendment.**

With respect to Plaintiff's claim for the violation of his Fourth Amendment rights premised

upon the detention of Plaintiff when Officer Cousins ran his drivers license, the pat down search

of Plaintiff, the search of Plaintiff's pockets, the seizure of devices from Plaintiff's person and his

car, all of which occurred on January 3, 2021, the veracity of the search warrant issued on January

8, 2021, and the seizure of a UXM smart phone on January 11, 2021, Plaintiff cannot succeed as

a matter of law.

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 15**

"An investigatory stop of a vehicle is reasonable under the Fourth Amendment if the officer reasonably suspects that a traffic violation has occurred." *United States v. Miranda-Guerena*, 445 F.3d 1233, 1236 (9th Cir. 2006). An officer may ask questions which prolong a traffic stop if there is reasonable suspicion of criminal activity, *United States v. Turvin*, 517 F.3d 1097, 1100-01 (9th Cir. 2008), or if "new grounds for suspicion of criminal activity continue[ ] to unfold." *United States v. Mayo*, 394 F.3d 1271, 1276 (9th Cir. 2005). As set forth in Plaintiff's Complaint, Officer Cousins made contact with Plaintiff on January 3, 2021, after a report was made to the police department about a suspicious person in the Alfalfa Loop area. Dkt. 3 at 5. Officer Cousin's contact with Plaintiff was reasonable under the Fourth Amendment and his questioning of Plaintiff, which ultimately led to Plaintiff's arrest, was reasonable, and no violation of the Fourth Amendment occurred.

In *Terry*, the Supreme Court held that where an investigatory stop is supported by reasonable suspicion, a "limited search of outer clothing for weapons"—often referred to as a "patdown" or "frisk"—is "reasonable under the Fourth Amendment." Arizona v. *Johnson*, 555 U.S. 323, 330 (2009) (citing *Terry v. Ohio*, 392 U.S. 1, 23-24, 27, 30 (1968)). The Supreme Court later held that "an officer making a traffic stop may order passengers to get out of the car pending completion of the stop." *Maryland v. Wilson*, 519 U.S. 408, 415 (1997). Additionally, "officers who conduct 'routine traffic stop[s]' may 'perform a patdown of a driver and any passengers upon reasonable suspicion that they may be armed and dangerous.'" *Johnson*, 555 U.S. at 332 (quoting *Knowles v. Iowa*, 525 U.S. 113, 117-18 (1998)). The pat down search of Plaintiff was reasonable and no violation of the Fourth Amendment occurred.

It is a well-settled exception to the warrant requirement that a police officer may search incident to a lawful arrest both the arrested person and the area within the person's "immediate

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 16**

control," that is, "the area from within which [the person] might gain possession of a weapon or destructible evidence." *Chimel v. California*, 395 U.S. 752, 763 (1969). The search must be "spatially and temporally incident to the arrest," and, to satisfy the temporal requirement, must be "roughly contemporaneous with the arrest." *United States v. Camou*, 773 F.3d 932, 937 (9th Cir. 2014).

In *United States v. Robinson*, 414 U.S. 218, 235 (1973), the United States Supreme Court held that an officer may conduct "a full search of the person" incident to the person's lawful custodial arrest. In *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1446 (9th Cir. 1991), the Ninth Circuit held that the "full search authorized by *Robinson* [is] limited to a pat-down and an examination of the arrestee's pockets, and d[oes] not extend to a strip search or bodily intrusion." *Id.* at 1446 (quoting *Giles v. Ackerman*, 746 F.2d 614, 616 (9th Cir. 1984)) (internal quotation marks omitted). The search of Plaintiff's pockets and the seizure of devices on January 3, 2021, incident to Plaintiff's arrest, and the seizure of the UXM phone on January 11, 2021, incident to Plaintiff's arrest were authorized under the Fourth Amendment.

In order for Plaintiff to succeed on his claim pertaining to the January 8, 2021, search warrant, he must "(1) establish that the warrant affidavit contained misrepresentations or omissions material to the finding of probable cause, and (2) make a 'substantial showing' that the misrepresentations or omissions were made intentionally or with reckless disregard for the truth." *Bravo v. City of Santa Maria*, 665 F.3d 1076, 1083 (9th Cir. 2011). There is no evidence that the affidavit submitted by Detective Uhrig contained intentional or reckless misrepresentations or omissions, or that the affidavit contained misrepresentations or omissions material to the finding of probable cause. Given that the January 8, 2021, search warrant arose from the execution of the search issued on January 5, 2021, and the January 12, 2021, search warrant arose from the

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 17**

execution of the January 8, 2021, search warrant and the district court specifically determined there was no evidence of omitted facts or falsehoods in the supporting affidavit, Plaintiff is unable to succeed on a claim based on alleged judicial deception.

> **c.**    **The Impoundment and Inventory Search of Plaintiff's Car and the Seizure of a Laptop from Plaintiff's Car was Reasonable Under the Fourth Amendment.**

"A seizure conducted without a warrant is per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions." *Miranda v. City of Cornelius*, 429 F.3d 858, 862 (9th Cir. 2005) (cleaned up). The inventory search doctrine is an exception to the warrant requirement that allows authorities to search items within their lawful custody. *South Dakota v. Opperman*, 428 U.S. 364, 369 (1976); *Illinois v. Lafayette*, 462 U.S. 640, 648 (1983); *Florida v. Wells*, 495 U.S. 1, 4-5 (1990). One of the most important features of the doctrine is the existence of standardized instructions. *Colorado v. Bertine*, 479 U.S. 367, 375-76 (1987).

The need for a "standardized" policy is necessarily a feature of the inventory search doctrine because, if an inventory is conducted pursuant to a standardized policy, a court knows that such a search would have been conducted regardless of the degree of suspicion an officer has of a person's (or an automobile's) criminality. *See United States v. Garay*, 938 F.3d 1108, 1111 (9th Cir. 2019) (explaining that a "department's policies do not define constitutional rights," but instead "assist courts to determine whether an inventory search is legitimate, as opposed to pretextual"). "In other words, a court can be reassured that regardless of motive, an inventory will reveal what it will reveal, as it requires an officer to do the same thing every time." *Snitko v. United States*, 90 F.4th 1250, 1261 (9th Cir. 2024).

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 18**

In the Ninth Circuit, "dual motives" are permissible in the inventory search context. That is, in the case of inventory searches, "the mere presence of a criminal investigatory motive or a dual motive—one valid, and one impermissible—does not render an [inventory] search invalid." *United States v. Johnson*, 889 F.3d 1120, 1126 (9th Cir. 2018) (internal quotation marks omitted). If an officer follows a truly "standardized" policy, it is inevitable that he or she would find evidence of a crime, regardless of whether he or she intends it." *Snitko*, 90 F.4th at 1261-62.

An inventory search of an impounded vehicle by the police is a reasonable search under the Fourth Amendment if conducted according to the standard procedures of a law enforcement agency. *Opperman*, 428 U.S. at 367; *United States v. Mancera-Londono*, 912 F.2d 373, 375 (9th Cir. 1990). A search of the contents of locked containers during a vehicle inventory does not offend the Fourth Amendment. *Bertine*, 479 U.S. at 371.

Detective Uhrig testified that Plaintiff's car was impounded incident to his arrest on January 11, 2021, that an impound inventory was conducted, and when a car is inventoried, any evidence or objects which are seized are stored in the Post Falls evidence room. Brereton Decl., Ex. A at City-074-0189. Detective Uhrig also testified that the laptop which was found in Plaintiff's car was collected, based on his belief that it may contain further evidence and to prevent the device from being lost or destroyed. *Id*.

Pursuant to the Post Falls Police Department Policy Manual, it is standard procedure for the PFPD to "provide reasonable safekeeping by storing [an] arrestee's vehicle", and an arrestee's vehicle "shall be stored whenever it is needed for the furtherance of an investigation or prosecution of the case or when the community caretaker doctrine would reasonably suggest that the vehicle should be stored." Brereton Decl., Ex. C. When a vehicle is stored or impounded, all property in

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 19**

the vehicle "shall be inventoried and listed on the vehicle storage form." *Id*. The standard procedures provide that the "inventory procedures are for the purpose of protecting an owner's property while in police custody, to provide for the safety of officers, and to protect this department against fraudulent claims of lost, stolen, or damaged property." *Id*. The impounded and inventory search of Plaintiff's car was reasonable and did not offend Plaintiff's s Fourth Amendment rights. *See Bertine*, 479 U.S. at 371; *Opperman*, 428 U.S. at 367; *Mancera-Londono*, 912 F.2d at 375.

**B.    Plaintiff's State Law Claims For Libel And Slander Are Barred As A Matter Of Law.**

All tort claims brought against a governmental entity are governed by the provisions of Idaho Code § 6-901 *et seq*. Under the Idaho Tort Claims Act ("ITCA"), a governmental entity is subject to liability arising out of its negligent acts where the governmental entity, if a private person or entity, would be liable for money damages under the laws of the state of Idaho. I.C. § 6-903. The ITCA provides in relevant part:

> All claims against a political subdivision arising under the provisions of this act and all claims against an employee of a political subdivision for any act or omission of the employee within the course or scope of his employment shall be presented to and filed with the clerk or secretary of the political subdivision within one hundred eighty (180) days from the date the claim arose or reasonably should have been discovered, whichever is later.

Idaho Code § 6-906. Idaho Code § 6-908, mandates that "[n]o claim or action shall be allowed against a governmental entity or its employee unless the claim has been presented and filed within the time limits prescribed by this act." "Compliance with the Idaho Tort Claims Act's notice requirement is a mandatory condition precedent to bringing suit, the failure of which is fatal to a claim, no matter how legitimate." *Dodge v. Bonners Ferry Police Dep't*, 165 Idaho 650, 655, 450 P.3d 298, 303 (2019) (internal quotations and citations omitted). The failure to file a tort claim in compliance with I.C. § 6-906 bars the claim. *Turner v. City of Lapwai*, 157 Idaho 659, 664, 339

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 20**

P.3d 544, 549 (2014).  "The notice requirement is in addition to the applicable statute of limitations."  *Dodge*, 165 Idaho at 655, 450 P.3dat 303.

According to Plaintiff's Complaint, the events giving rise to the claims alleged in the Complaint occurred on or around January 12, 2021 .  Dkt. 3 at 9.  Pursuant to Idaho Code § 6-906, Plaintiff was required to present and file his claims with the clerk or secretary of the City of Post Falls within 180 days of January 12, 2021.  Thus, any claims by Plaintiff were required to be presented and filed by July 11, 2021. I.C. § 6-906.  Plaintiff has not alleged and cannot present any admissible evidence demonstrating that he, in fact, filed a tort claim with the City of Post Falls prior to filing suit.

Plaintiff did not comply with the prerequisites of the Idaho Tort Claims Act.  In accordance with Idaho Code § 6-908, Plaintiff's claims for libel and slander against Defendants must be dismissed as a matter of law.  *Dodge*, 165 Idaho at 655, 450 P.3d at 303; *Turner*, 157 Idaho at 664, 339 P.3d at 549.

### III.    CONCLUSION

For the reasons set forth herein, Defendants are entitled to summary judgment on all of Plaintiff's claims.  Defendants respectfully request for the Court to grant their motion for summary judgment and dismiss all of Plaintiff's claims with prejudice.

DATED this 22nd day of October, 2025.

LAKE CITY LAW GROUP PLLC


/s/ *Katharine B. Brereton*
KATHARINE B. BRERETON

*Attorney for Defendants*


**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 21**

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 22nd day of October, 2025, I filed the foregoing electronically through the CM/ECF system,

AND I FURTHER CERTIFY that the foregoing was served on the following non-CM/ECF registered participants in the manner indicated:

Via First Class Mail, postage prepaid addressed as follows:

Plaintiff, *pro se*:

Chadlen DeWayne Smith    ☒ U.S. Mail
419 E Hawthorne Rd.
Apt. #10
Spokane, WA 99218

/s/ *Katharine B. Brereton*
Katharine B. Brereton

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 22**